# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-4124

_____

| | | |
|---|---|---|
| Mareko Molathwa, | * | |
| | * | |
| Petitioner, | * | |
| | * | Petition for Review of an |
| v. | * | Order of the Board of |
| | * | Immigration Appeals. |
| John Ashcroft, Attorney General | * | |
| of the United States of America, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: October 18, 2004
Filed: December 2, 2004 (Corrected: 1/26/05)

_____

Before MORRIS SHEPPARD ARNOLD, BOWMAN, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

Mareko Molathwa (Molathwa) petitions for review of a decision of the Board of Immigration Appeals (BIA) summarily affirming the Immigration Judge's (IJ) denial of Molathwa's application for asylum and withholding of removal. For the reasons set forth below, we deny Molathwa's petition for review and affirm the BIA's decision.

## I. BACKGROUND

Molathwa, a native of Botswana, entered the United States in December 1997 as a nonimmigrant visitor. On November 9, 1999, the Immigration and Naturalization Service commenced removal proceedings, charging Molathwa as a nonimmigrant who had remained in the United States longer than authorized. Molathwa admitted the allegations, conceded the charge of removability, and filed an application for asylum and withholding of removal.

The IJ held an evidentiary hearing on the merits of Molathwa's claims for asylum and withholding. At the hearing, Molathwa testified he had been married and had a son in Botswana. Molathwa's wife divorced him after Molathwa became involved in a romantic relationship with another man, Berger Hartlebrakke (Berger). In 1994, while Molathwa and Berger were living together in Botswana, police officers entered Molathwa's and Berger's apartment without a warrant. The police officers said they were doing "routine checks" for drugs, but never searched the apartment for drugs. Molathwa claims the incident was merely a pretext to harass him and Berger because of their sexual orientation.

Molathwa testified two friends in Botswana experienced disparate treatment due to their sexual orientation. Molathwa had a friend in Botswana whose cousins beat him for having an affair with another man. Another friend, a South African, was arrested and jailed for two days in Botswana for engaging in homosexual activity. Molathwa speculates this friend, who later committed suicide, did so due to his disgrace from being exposed as a homosexual.

Molathwa held various teaching jobs in Botswana until he left for the United States. Although Molathwa suspects people knew he was a homosexual, he never experienced any problems at work. Molathwa believes his son lost friends in Botswana because parents suspected Molathwa is a homosexual and told their children not to play with Molathwa's son because his father is evil. Molathwa does

not believe his family would harm him, but he fears others would. In Botswana, according to Molathwa, homosexuals are blamed for diseases, like AIDS, and for natural disasters, and Molathwa is afraid others would beat him to death to save Botswana from epidemics.

Molathwa did not file for asylum within the first year of his arrival in the United States. Molathwa testified he did not want to accept his sexual orientation, he did not know whom to trust, and he did not know homosexuals could apply for asylum in the United States. Molathwa claims he learned in therapy that homosexuals are protected under the laws of the United States. Molathwa submitted to the IJ a letter from Douglas Jensen, Molathwa's psychotherapist, who opines it is likely Molathwa's depressive symptoms may have contributed to his failure to file for asylum in a timely manner.

The IJ held Molathwa failed to file his asylum application in a timely manner and failed to meet the extraordinary circumstances standard for excusing the untimely filing of an asylum application. Alternatively, the IJ determined that, although he found Molathwa's testimony credible, Molathwa did not suffer past persecution or have a well-founded fear of future persecution on account of his sexual orientation. Based on the same evidence, the IJ denied Molathwa's request for withholding of removal. The BIA affirmed the IJ's decision without opinion, so the IJ's determination became the final agency decision. Ngure v. Ashcroft, 367 F.3d 975, 980 (8th Cir. 2004) (citing 8 C.F.R. § 3.1(e)(4)(ii)).

Molathwa petitions for review of the BIA's decision to deny his application for asylum and withholding of removal. Molathwa argues the BIA erred in (1) summarily affirming the IJ's decision without a written opinion; (2) concluding Molathwa failed to show changed circumstances sufficient to excuse his failure to file a timely application for asylum; and (3) determining Molathwa failed to demonstrate

it is more likely than not that, if removed to Botswana, he would be subject to persecution on account of his sexual orientation.

## II.    DISCUSSION

Arguing the BIA misapplied its streamlining regulations when it affirmed the IJ's decision without a written opinion, Molathwa asks this court to remand his case for reconsideration. We generally lack jurisdiction to review the BIA's decision to use its streamlined procedure. See Ngure, 367 F.3d at 988 ("[W]e do not agree that the determination to streamline a particular case is generally amenable to judicial review."). Accordingly, the BIA's decision to streamline Molathwa's case is immune from our review. Additionally, the BIA's streamlined procedures do not violate due process. Loulou v. Ashcroft, 354 F.3d 706, 709 (8th Cir. 2003). Even if the BIA's decision to streamline were reviewable, the BIA did not err in streamlining review of Molathwa's case. See 8 C.F.R. § 1003.1(e)(4)(i) (permitting the BIA to affirm without opinion when it determines the IJ's decision is correct, any errors are harmless or nonmaterial, and the issues are either squarely controlled by precedent or are not so substantial that the case warrants issuance of a written opinion).

Molathwa also argues the BIA erred in finding his application for asylum is time-barred. To be eligible for asylum, an applicant must file his application within one year of his arrival in the United States. 8 U.S.C. § 1158(a)(2)(B). An applicant's failure to file a timely application for asylum will be excused only if he can show "either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing." 8 U.S.C. § 1158(a)(2)(D). Molathwa contends his application for asylum is not barred by the one-year deadline because of "changed circumstances." Congress, however, has barred judicial review of the BIA's denial of asylum based on an applicant's failure to file a timely application. Section 1158(a)(3) provides "[n]o court shall have jurisdiction" to review a determination by the Attorney General that an application is untimely. 8 U.S.C. § 1158(a)(3). Because Molathwa's asylum claim

was denied as untimely, we lack jurisdiction to review the BIA's determination that he did not demonstrate changed circumstances. Ngure, 367 F.3d at 989 (citing Ismailov v. Reno, 263 F.3d 851, 855 (8th Cir. 2001)).

Finally, Molathwa contends the BIA erred in denying his request for withholding of removal. An application for withholding of removal is not subject to a one-year filing deadline. Id. We review for substantial evidence the BIA's determination an alien is not eligible for withholding of removal, and we may overturn the BIA's determination only if "the evidence was so compelling that no reasonable fact finder could fail to find the requisite fear of persecution." Perinpanathan v. INS, 310 F.3d 594, 597 (8th Cir. 2002) (citation omitted).

To be eligible for withholding of removal, Molathwa must show an objectively established, clear probability he would suffer future persecution in Botswana because of his race, religion, nationality, membership in a particular social group, or political opinion. Al Tawm v. Ashcroft, 363 F.3d 740, 744 (8th Cir. 2004); Ngure, 367 F.3d at 989. In other words, Molathwa must present evidence it is "more likely than not that [he] would be subject to persecution" because of his membership in a particular social group. Al Tawm, 363 F.3d at 744 (citation omitted). We will assume, for purposes of Molathwa's appeal, homosexuals are a particular social group eligible for relief. See Hernandez-Montiel v. INS, 225 F.3d 1084, 1094 (9th Cir. 2000).

We agree with the IJ and the BIA that Molathwa did not prove it was more likely than not he would be subject to persecution in Botswana. Molathwa asserts he was "harassed personally by the police." However, the officers' warrantless entry into Molathwa's and Berger's apartment in Botswana was an isolated event and did not involve violence, threats, intimidation, detention, or even a search. Homosexual conduct is criminal in Botswana, as it was until recently in some jurisdictions within

the United States, but Molathwa was never charged with a crime in Botswana. Molathwa also testified about two incidents involving mistreatment of homosexuals in Botswana: (1) the incident in which Molathwa's friend was beaten by relatives because of his sexual orientation; and (2) the man who was incarcerated for two days after being caught engaging in homosexual activity. However, these incidents do not show any pattern of harassing homosexuals in Botswana. We conclude substantial evidence supports the BIA's determination Molathwa presented insufficient evidence to show he was subjected to harassment or mistreatment by the Botswana government or the general public, and nothing in the record suggests Molathwa now would be the target of persecution if he is removed to Botswana.

## III.   CONCLUSION

Accordingly, we deny Molathwa's petition for judicial review.

_____